**WEINTRAUB TOBIN LAW CORPORATION**
DAVID R. GABOR, State Bar No. 145729
10250 Constellation Blvd., Suite 2900
Los Angeles, California 90067
Telephone: (310) 858-7888
Facsimile:  (310) 550-7191
Email: dgabor@weintraub.com

Attorneys for Plaintiffs
RICHARD "CHEECH" MARIN, an individual;
KOO KOO BANANA, INC., a California Corporation

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD "CHEECH" MARIN, an individual; KOO KOO BANANA, INC., a California Corporation, <br><br> Plaintiffs, <br><br> v. <br><br> STEVEN CHIOCCHI, an individual; CHEECH'S OWN, LLC, a New Jersey Limited Liability Company, <br><br> Defendants. | Case No.: 2:19-cv-8082 <br><br> **COMPLAINT FOR:** <br><br> 1. **VIOLATION OF THE CALIFORNIA COMMON LAW RIGHT OF PUBLICITY;** <br><br> 2. **VIOLATION OF THE CALIFORNIA STATUTORY RIGHT OF PUBLICITY – CAL. CIVIL CODE §3344;** <br><br> 3. **FEDERAL UNFAIR COMPETITION – 15 U.S.C. §1125(a);** <br><br> 4. **UNFAIR COMPETITION UNDER CALIFORNIA STATUTE AND COMMON LAW;** <br><br> 5. **VIOLATION OF THE FEDERAL TRADEMARK DILUTION ACT – 15 U.S.C. §1125(c);** <br><br> 6. **DILUTION OF TRADE NAME – CAL. B&P CODE §1443;** |

**weintraub tobin** chediak coleman grodin
LAW CORPORATION

7.  **CYBERPIRACY – 15 U.S.C. §
    1125(d)**

*DEMAND FOR JURY TRIAL*

Plaintiffs for their Complaint against Steven Chiocchi and Cheech's Own, LLC ("Defendant" or "Defendants"), alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332, as there is diversity of citizenship between the parties and the amount in controversy exceeds, exclusive of costs and interest, the sum of seventy-five thousand dollars ($75,000).

2.      This Court has subject matter jurisdiction over the federal causes of action pursuant to 28 U.S.C. §1331.

3.      This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367(a) and also to the extent that the state claims arise out of the same common nucleus of fact as the federal claims herein.

4.      Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391(a), (b)(2) and (c) because Plaintiff  Cheech resides in this judicial district and Plaintiff Koo Koo Banana, Inc. is a California corporation with its principal place of business in this judicial district, and because the claims and harms at issue in this action arose in this judicial district as of the time the action was commenced.

## PARTIES

5.      Plaintiff Richard "Cheech" Marin ("Plaintiff" or "Cheech") is and at all relevant times herein has been, an individual and resident and domiciliary in Los Angeles, California, within this judicial district.

6.      Plaintiff Koo Koo Banana, Inc. is and at all relevant times herein has

weintraub **tobin** chediak coleman grodin
LAW CORPORATION

been, a California corporation, with its principal place of business in Los Angeles, California, within this judicial district. Koo Koo Banana, Inc. is the owner of Richard "Cheech" Marin's federally registered trademark of the word "Cheech" referenced in this action.

7.     Plaintiffs are informed and believe, and based thereon allege, that Defendant Steven Chiocchi, is, and all relevant times herein has been, a New Jersey resident and domiciliary. Aside from operating Defendant Cheech's Own, LLC he is also a principal of the Areli Group, a company that specializes in Internet marketing, branding, social media management and market optimization.

8.     Plaintiffs are informed and believe, and based thereon allege, that Defendant Cheech's Own, LLC is a New Jersey limited liability company with its principal place of business at 30 South Doughty Avenue, Apt. 204, Somerville, New Jersey.  Plaintiffs are further informed and believe, and based thereon allege that Defendant Cheech's Own, LLC owns and operates "Cheech's Own Coffee Company" as a "dba" and has a physical retail establishment at 37 West Main Street, Somerville, New Jersey.

9.     Defendants are, and at all times relevant hereto were, the alter-ego, principal, agent, employee, employer, joint venture, customer, and/or otherwise affiliated with one another so as to be liable in such capacity for the acts alleged herein.

## NATURE OF THE ACTION

10.     Very simply, Defendants have knowingly, consciously and maliciously ripped-off and diluted Plaintiffs' name, brand, identity and trademark. Defendants have commercially trafficked on Plaintiff Cheech's fame and identity through their "Cheech's Own" brand to further their own pecuniary interests.

11.     Over the course of fifty years, Richard "Cheech" Marin has enjoyed renown as one of the world's most famous comedians. Both his name and likeness

weintraub tobin chediak coleman grodin
LAW CORPORATION

are instantly recognizable in media and popular culture.  Originally known as half of the nationally and internationally famous comic duo, "Cheech & Chong," Cheech has long-since fashioned his own identity and celebrity based on his name, likeness, voice and other characteristics.  His celebrity is intersectional, multi-generational, multi-ethnic, and multi-national. Both with Tommy Chong and individually, performing as "Cheech," Plaintiff has continuously been in the public eye since at least 1971.

12.    In more recent years, Plaintiff Cheech's fame and celebrity have grown well beyond his roots as a comedian and actor.  He is known as a writer, voice-over artist and aficionado of fine arts (with a focus on Chicano Art), certain beverages, and, of course, cannabis and THC products (often associated with his early "stoner" comedy).  Cheech is also an independently successful businessman with a wide and ever-expanding array of trademarked goods, each of which prominently features his name and/or his likeness.

13.    Plaintiff created the unique spelling of his trade name, "Cheech" from whole cloth insofar as the more common nickname is spelled "chich"  (a popular diminutive for *chicharron*, a popular fried port snack).

14.    Plaintiffs are informed and believe, and based thereon allege, that the name "Cheech's Own" has been used by Defendants since at least approximately 2015.  Using the name "Cheech's Own," Defendants have created a branded company that sells and/or has sold various items (including whole bean coffee, coffee and coffee beverage products, tea, soap, body scrubs and textiles).  On information and belief, these products were initially sold in New Jersey market stalls at various local events, but are now sold from a Somerville, New Jersey coffee shop and via the Internet on, among other sites/places, "cheechsown.com."  Additionally, Plaintiffs are informed and believe, and based thereon allege, that Defendants' products are sold in various third-party shops, gourmet stores, etc. in New Jersey

weintraub tobin chediak coleman grodin
LAW CORPORATION

1    and possibly elsewhere.

2       15.    Specifically, Defendants' products are advertised world-wide via a

3    proprietary "cheechsown.com" website that directly traffics off Plaintiff Cheech's

4    name, as well as on instagram, Facebook, Twitter, YouTube, etc.  Such activities

5    create consumer confusion as to the origin of the product.  Such illicit activities also

6    create a false implied endorsement and otherwise violate Plaintiffs' right to control

7    the famous Cheech name, identity and brand.  Finally, Defendants' activities cause

8    misbranding and dilute, blur and/or tarnish the Cheech trademark owned by Plaintiff

9    Koo Koo Banana, Inc.

## FACTS AND AVERMENTS COMMON
## TO ALL CAUSES OF ACTION

12      16.    Plaintiff  Richard "Cheech" Marin is a famous television and film

13   actor, writer, producer, director, performer, singer-songwriter, voice-over artist and,

14   of course, a well-known stand-up comic who still regularly tours and sells-out

15   venues across the United States and the world.  Cheech is also one-half of the

16   famous comedy duo known as "Cheech and Chong," arguably one of the most

17   successful and influential American comic acts of all time.

18      17.    Following a lengthy stand-up and recording career in the early 1970s

19   and beginning with his first credited acting role in his 1978 film "Cheech and

20   Chong's Up in Smoke," Cheech now has over 110 credited acting roles in television

21   and film to his name.  This includes both comedic and dramatic roles, in major

22   Hollywood productions such as the film "Cheech and Chong's Up in Smoke" and

23   the television show "Nash Bridges."  In addition, Plaintiff Cheech regularly works

24   as a voice over artist, having provided voice over performances in well-known

25   animated feature films such as "Cars" and "The Lion King." The top six films in

26   which Cheech has been involved as an actor, writer, producer, or director have

27   grossed over $160 million in worldwide box office revenues. This figure does not

28

include either any ancillary income streams from those films *or* films in which Cheech has performed significant voiceover work, as such work would account for hundreds of millions of dollars more in worldwide revenues.

18.     While Plaintiff Cheech's current focus is on live performance and television projects, his earlier films have become staples of the resale market, in all of its forms, whether via broadcast, cable, or digital media channels. Plaintiff Cheech's earlier film work continues to provide Plaintiff with a steady flow of income and, to some extent, forms the basis for his current-day endorsements and spin-off products.

19.     In addition, prior to and throughout his career in television and on film, Plaintiff Cheech has regularly and extensively toured in the United States, Canada, and elsewhere in the world doing his comedy routines.  A listing of Cheech's current tour dates with his comedy partner Tommy Chong (performing as the duo "Cheech & Chong") can be found on Plaintiff Cheech's website located at www.cheechandchong.com/tour.

20.     Over the years, Plaintiff Cheech has also recorded numerous best-selling comedy albums, including the comedy album *Cheech & Chong*, the 1971 self-titled debut album of Cheech & Chong which features the sketch "Dave," which is one of his most famous routines. Plaintiff has also released two best-selling albums in the children's music genre including the album "My Name is Cheech, the School Bus Driver" dating from 1992.  In 2007, Cheech added children's book author to his list of accomplishments with the release of an illustrated children's book of the same name.

21.     By virtue of his extensive acting roles in feature films and on television, and his extensive comedy career, Plaintiff Cheech has an instantly recognizable name and face that is known to millions in the so-called "baby boom" generation – and well beyond.  Cheech's films, record albums and live performances

weintraub **tobin** chediak coleman grodin
LAW CORPORATION

have made him, both individually, and with his comedic partner, Tommy Chong, famous the world over.

22.    In recognition of his fame and status as a public figure, Plaintiff also regularly appears "as himself" in television and film projects, in addition to his credited acting roles. For example, Plaintiff Cheech was the winner of the inaugural *Celebrity Jeopardy!* tournament in 1992, and has also appeared on "reality" television shows such as *Celebrity Duets* and *Rachael vs. Guy: Celebrity Cook-Off.*

23.    Plaintiff Cheech's unique name and likeness is instantly recognizable to consumers the world-over and has come to be associated with him and the films, comedy act and products he owns or endorses.  For example, Plaintiff's name and likeness is prominently featured on his websites located at www.cheechmarin.com and www.cheechandchong.com, which are used to promote projects and products with which he is involved.

24.    Plaintiff Cheech's fame is current and ongoing.  He is active on social media platforms such as Facebook and Twitter with over 734,000 "likes," 64,000 "followers" and tens of millions of views on YouTube where his name and likeness is prominently featured.  These platforms provide an opportunity for Plaintiff's fans to interact with him and learn about his latest projects.

25.    Plaintiff Cheech's name and likeness (both together and/or separately) have become widely known by a substantial segment of the public in the United States and elsewhere in the world. As such, Plaintiff's name and likeness are valuable commercial assets that symbolize Plaintiff and the level of quality of his own services and of the products he endorses, as well as the goodwill associated with them. There is no question that Plaintiff Cheech's name and likeness are distinctive and famous.

26.    As an entertainer, Plaintiff Cheech's career depends upon his public persona. In the course of a career spanning fifty years, Cheech has invested

1  substantial time, energy, effort and expense into achieving, developing and

2  maintaining his considerable professional and commercial success, as well as

3  developing and maintaining his popularity and keeping the fame and prominence of

4  his name and likeness in the public eye.

5       27.    Plaintiffs offer for sale certain branded merchandise, including

6  clothing, posters, stickers, magnets, mugs, figurines, and other paraphernalia all of

7  which feature Plaintiff Cheech's name and/or likeness.  While certain items are or

8  have been sold through his own online stores, Plaintiffs have licensed certain

9  products and have allowed the use of Plaintiff Cheech's name and/or likeness in

10 connection with such licenses.  In either instance (direct sale or license), Plaintiffs

11 are careful not only about the quality of the products they license or sell but also of

12 each of their licensees insofar as the activities and qualities of the licensees and

13 licensed products directly relate to Plaintiff Cheech's personal brand.

14      28.    Plaintiff Cheech, through Plaintiff Koo Koo Banana, Inc., has a

15 registered trademark for "Cheech" found at US. Reg. No. 5489180 and a pending

16 application for trademark under U.S. Ser. No. 86765064.

17      29.    Due to Plaintiff Cheech's enduring popularity and profile in the world

18 of entertainment, media and pop culture, Cheech enjoys significant name and image

19 recognition and has enjoyed many endorsement opportunities in a variety of product

20 categories, including but not limited to, beverages.

21      30.    Plaintiff Cheech has a unique place in the entertainment and artistic

22 world and has a unique and immediately identifiable name and/or likeness that is

23 invaluable in obtaining certain kinds of endorsements or in selling products. While

24 Plaintiff Cheech is a particularly valuable endorser in the smoking and

25 "counterculture" product categories, due to his reputation in the counterculture

26 community, which has been developed over his professional career, he has also a

27 strong and demonstrable track record of "cross-over" endorsements and

28

weintraub tobin chediak coleman grodin
LAW CORPORATION

accomplishments.  The list of such projects and endorsements is long, but includes everything from children's books to food and beverage items.  For example, Plaintiff Cheech presently endorses an array of products, including foods, clothing and apparel, and sauces, which are sold in the United States, Canada, and elsewhere in the world. In addition to his present endorsement activities, Plaintiff Cheech is actively working on expanding the range and number of products which he endorses, including into further beverage products.

## DEFENDANTS' UNLAWFUL ACTIVITIES

31.     Plaintiffs recently became aware of  Defendants and their activities in association with the "Cheech's Own" brand.  Specifically, Defendants have traded off Plaintiff Cheech's famous name by operating an unincorporated entity called "Cheech's Own Coffee Company" that, on information and belief, is a DBA/trade name for Cheech's Own, LLC.  Cheech's Own Coffee Company manufactures, sells, and distributes coffee and coffee products. The "Cheech's Own" brand, however, also manufactures, sells and distributes, *inter alia,* textiles, soap and other health & beauty products (including skin scrubs and exfoliants), all in violation of Plaintiffs' rights.

32.     Defendants market their products via various social media platforms, including at their website, "cheechsown.com." Defendants' social media sites include a proprietary "cheechsown" Instagram page and Defendants use variants of Plaintiff Cheech's name in hashtags that include #cheechsown (which includes images of Cheech & Chong); #cheechyoself; #cheechsowncoffeeshop; #cheechsowncafe; #cheechsowncoldbrew, among others.

33.     As described in more detail below, Defendants have (without authorization but with full knowledge of Plaintiff Cheech's identity and Plaintiffs' rights, title, and interest in and to the Cheech name and/or identity and/or famous trademarks) adopted, used and promoted Cheech's name –  and continue to do so –

**weintraub tobin** chediak coleman grodin
LAW CORPORATION

in order to direct attention to Defendants' wares and business(es) to suggest or imply that they are affiliated or sanctioned by Plaintiffs, when that is not the case.

34.    The initial and continuing use of Plaintiffs' trade name (or variant thereon) of "Cheech's Own" is a knowing, malicious, oppressive, fraudulent and willful act, calculated to harm Plaintiffs' brand and existing trademark. Defendants' activities impairs Plaintiffs' trademark zone of expansion and is a naked attempt to profit off Plaintiff Cheech's name. Defendants' ongoing acts are willful, malicious, fraudulent and oppressive and deserving of enhanced and/or punitive damages. Specifically, on February 15, 2018, Defendants applied for a trademark for "Cheech's Own" via U.S. Application Serial No. 87799675.  On June 5, 2018, the United States Patent and Trademark Office rejected the application. A true and correct copy of the June 5, 2018 Rejection is attached as Exhibit "A" hereto.

35.    In rejecting Defendants' Application Serial No. 87799675 for the name "Cheech's Own," the USPTO stated in its Office Action, in part, as follows:

- "The applied-for mark consists of or includes matter which may falsely suggest a connection with Cheech Marin . . . Cheech Marin is so well known that consumers would presume a connection."

- "The applied for mark CHEECH'S OWN, uses the name CHEECH which is the shortened name used by the famous comedian."

- "Cheech is already the brand ambassador for PAPALOTE MEZCAL… therefore his name is already connected to a beverage."

- "Moreover, consumers are familiar with celebrities creating coffee lines…"

- "As a result consumers would reasonably believe Cheech Marin is connected to the Applicant's mark."

- "Registration is refused because the applied for mark consists of or includes matter which may falsely suggest a connection with  [the] famous

weintraub tobin chediak coleman grodin
LAW CORPORATION

comedian, actor, narrator, and writer Cheech Marin."

- "Since celebrities are commonly associated with food product lines and Cheech Marin already endorses a beverage, the public would reasonably assume a connection between him and food products, such as coffee, coffee-based beverages, and coffee beans."

36. The USPTO, in its Office Action, wrote that it might reconsider the rejection if Defendants submitted a written consent by Plaintiff Cheech. No such consent from Plaintiff Cheech (or the record holder of the Cheech trademark, Koo Koo Banana, Inc.) was ever sought by Defendants, nor did Defendants ever disclose to Plaintiffs their attempt to register Plaintiff's name.

37. The Rejection by the USPTO was complete and devastating. Its language, as quoted above, was so damning as to the actual or potential infringement, that Defendants never even bothered to file a response to the Office Action/rejection of the Application.

38. Despite categorically being told by the U.S. government that they were creating consumer confusion in using Plaintiffs' name and trademark without Plaintiffs' consent, and despite knowing that they were trading off – and profiting from – Plaintiff Cheech's name, Defendants continued, and continue to this day, to use the name "Cheech's Own" and continue to rip-off and profit from their knowing, willful and fraudulent conduct, to the detriment of Plaintiffs.

39. The fact that Defendants' conduct is willful and malicious in terms of the use of the "Cheech's Own" brand is underscored by the fact that Plaintiff Chiocchi is an Internet and branding expert. As professional involved in Internet marketing and branding, he cannot pretend to be oblivious of the power of Plaintiffs' brand identity. He cannot pretend not to know exactly what he was doing in creating a branded product line that could have been called anything –but that he willfully choose to call "Cheech's Own." Indeed, to this very day, despite

weintraub tobin chediak coleman grodin
LAW CORPORATION

Defendant Chiocchi's personal knowledge that his conduct and commercial efforts misrepresent a connection with Plaintiff Cheech, and despite being specifically told the exact same thing in very harsh language by the USPTO, Defendants continue to offer their products for sale on Defendants' website and on other social media platforms, including YouTube, Facebook and Twitter. Using this full-court press of social media – in which Defendant Chiocci is apparently an expert – Defendants promote, advertise, and/or offer for sale a range of whole bean coffees, coffee drinks and other beverage products as well as clothing, apparel, soaps, scrubs (including Cheech's Own Sweet & Fresh Coffee Body Scrub), and other items (for pay or as promotional items) such as stickers, plastic cups, ceramic cups, mugs, coffee cup sleeves, in association with names and marks that include the word "Cheech." This conduct is a direct and knowing violation of Plaintiffs' rights.

40. Beyond such direct sales, and in addition to sales of Defendants' products offered through the "cheechsown.com" website and at their own Sommervile, New Jersey coffee shop, Defendants distribute their products to over 15 retail outlets, who then resell the "Cheech's Own" brand of products through proprietary physical and online retail channels.

41. Plaintiffs have never used nor endorsed Defendants, their business, or their products. Plaintiffs did not authorize Defendants to use Plaintiff Cheech's name for their products or for the advertisement of their products, nor have Plaintiffs been compensated by Defendants in any way for Defendants' commercial activities in association with Plaintiff Cheech's name.

42. Given the above facts, there is no question of consumer confusion created by Defendants' illicit acts, or Defendants' knowledge of the wrongfulness of their conduct. Defendants have specifically created a brand and a coffee company designed to profit off the use of Plaintiff Cheech's name and to wrongfully suggest to the consuming public that Plaintiff Cheech is associated with, endorses or profits

weintraub tobin chediak coleman grodin
LAW CORPORATION

from Defendants' product. Defendants' conduct as described herein also dilutes, blurs and tarnishes Plaintiffs' registered mark as well as Plaintiff Cheech's brand in general.

## **FIRST CLAIM FOR RELIEF**

### **Violation of the California Common Law Right of Publicity**
### **(Against All Defendants)**

43.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 42 as though fully set forth herein.

44.     In committing the acts alleged herein, Defendants have misused for their own commercial purposes Plaintiff Cheech's name, identity and persona in connection with the infringing sales and promotions without Plaintiffs' consent.

45.     The commercial use and misappropriation of Plaintiff Cheech's name, identity and persona is a violation of the California common law right of privacy, which includes the right of publicity.  Said wrongful use and misappropriation constitutes, *inter alia*, a wrongful and false implied endorsement of  Defendants' product that has resulted in pecuniary gain and/or other commercial advantage to Defendants.

46.     In committing the acts alleged herein, Defendants, and each of them, acting with oppression, fraud and malice, and with willful and conscious disregard of Plaintiffs' rights and interests, have knowingly and unlawfully misused and misappropriated Plaintiff Cheech's name, identity and persona in connection with the infringing sales and promotions for Defendants' own commercial purposes.

47.     As a result of  Defendants' acts alleged herein, Plaintiffs have suffered and will continue to suffer injury and damages in excess of the jurisdictional minimum of this Court in an amount to be proven at trial.

48.     Defendants' violations alleged herein are continuing and unless restrained and enjoined will cause irreparable injury to Plaintiffs' business and

property for which Plaintiffs have no adequate remedy at law.

## SECOND CLAIM FOR RELIEF

### Violation of the California Statutory Right

### of Publicity –  Civil Code § 3344

### (Against All Defendants)

49.     Plaintiffs incorporate by reference paragraphs 1 through 42 as though fully set forth herein.

50.     In committing the acts alleged herein, Defendants, and each of them, acting with oppression, fraud and malice, and with willful and conscious disregard of Plaintiffs' rights and interests, have knowingly and unlawfully misused and misappropriated Plaintiff Cheech's name, identity and persona in connection with the infringing sales and promotions for Defendants' own commercial purposes.

51.     Defendants' misappropriation of plaintiff Cheech's name, identity and persona is a violation of California Civil Code § 3344 and was used directly for Defendants' own advertising and commercial purposes.

52.     As a result of Defendants' acts alleged herein, Plaintiffs have suffered, and will continue to suffer, damages in excess of the jurisdictional minimum of this Court in an amount to be proven at trial.

53.     Defendants' violations alleged herein are continuing and unless restrained and enjoined will cause irreparable injury to Plaintiffs' business and property for which Plaintiffs have no adequate remedy at law.

## THIRD CLAIM FOR RELIEF

### For Federal Unfair Competition – 15 USC § 1125(a)

### (Against All Defendants)

54.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 42 as though fully set forth herein.

55.     In doing the acts alleged herein, Defendants have engaged in

weintraub tobin chediak coleman grodin
LAW CORPORATION

commercial activity that is likely to cause confusion and/or mislead consumers into believing that Plaintiffs have endorsed, sponsored, or otherwise approved of Defendants' products and/or services when in fact they have not.

56.     Defendants' acts as set forth in this Complaint have, in fact, misled and confused consumers, and continue to mislead and confuse consumers.

57.     Defendants' conduct constitutes a willful violation of 15 U.S.C. §1125(a)(1)(A) insofar as such conduct creates the appearance of a false endorsement in connection with goods and/or services. This is particularly true insofar as Plaintiff Cheech is a well-known and famous celebrity who has very high name-recognition in most segments of society, including the segment for whom Defendants' product is intended.

58.     As a result of Defendants' acts alleged herein, Plaintiffs have suffered, and will continue to suffer, damages in excess of the jurisdictional minimum of this Court in an amount to be proven at trial.

59.     Defendants' violations alleged herein are continuing and unless restrained and enjoined will cause irreparable injury to Plaintiffs' business and property for which Plaintiffs have no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF

### For Unfair Competition Pursuant to California Statute and Common Law
### (Against all Defendants)

60.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 42, inclusive, of this Complaint as though fully set forth herein.

61.     This claim for relief arises under the California law of unfair competition, California Business and Professions Code § 17200 *et seq*. and the California common law.

62.     As described herein, Defendants have engaged in acts of unfair competition which injure Plaintiffs' name, business, goodwill and contractual and

weintraub **tobin** chediak coleman grodin
LAW CORPORATION

business relationships.  Defendants' acts were committed with full knowledge of their impropriety and with the intent to injure Plaintiffs' business.  Said acts were accomplished by means of the deceptive use in connection with Defendants' products, services and shops, all of which trade on Plaintiff's name, fame, trademarks and trade names which are confusingly similar to Plaintiffs' famous name and trade name and marks.  Defendants' goods and  shops compete with those of Plaintiffs.  As a direct and proximate result of Defendants' violations charged herein, Plaintiffs have been injured in their business and property.

63.    As a result of Defendants' acts alleged herein, Plaintiffs have suffered, and will continue to suffer, damages in excess of the jurisdictional minimum of this Court in an amount to be proven at trial.

64.    At the time Defendants committed the unlawful acts, Defendants were guilty of fraud, oppression, malice and a willful and conscious disregard of Plaintiffs' rights in that Defendants willfully adopted and used a substantially identical and confusingly similar trade name to Plaintiffs' name, trade name and trademark.  Defendants committed the aforementioned acts of unfair competition with a conscious disregard of Plaintiffs' rights and the acts were ratified and authorized by the officers, directors and agents of Defendants.  Plaintiffs have been oppressed and injured and are entitled to an award of enhanced, punitive and exemplary damages in an amount to be proven at trial.

65.    Defendants' violations alleged herein are continuing and unless restrained and enjoined will cause irreparable injury to Plaintiffs' business and property for which Plaintiffs have no adequate remedy at law.

/ / /

/ / /

## FIFTH CLAIM FOR RELIEF

### For Trademark Dilution Under the Federal Trademark
### Dilution Revision Act – 15 U.S.C. § 1125(c)
### (Against all Defendants)

66.     Plaintiffs incorporate by reference the allegations of paragraphs 1 through 42, inclusive, of this Complaint as though fully set forth herein.

67.     Plaintiff Cheech, through Plaintiff Koo Koo Banana, Inc., is the owner of a famous name, "Cheech" and related famous federally registered trademark of his famous name. Plaintiff Cheech has used the marks registered by Koo Koo Banana in commerce since 2010 and his own name for fifty years.  Plaintiffs extensively and continuously advertise Plaintiff Cheech's name and mark throughout the country and the world via advertisements, social media, traditional media, personal appearances and live performances, among other avenues of exposure.  As a result of such efforts, Plaintiffs have obtained a high level of distinctiveness, public recognition and fame of both Plaintiff Cheech and of Koo Koo Banana, Inc.'s registered mark so that when people hear the word "Cheech" they instantly think of Plaintiff Cheech's name, identity, likeness and/or persona.

68.     Plaintiffs trademarked items are sold in commerce and are distributed in many of the same channels that Defendants subsequently set-up to sell their own dilutive brand.  Defendants' marketing efforts, which are active and ongoing, involve brick and mortar resellers and stores as well as a calculated Internet sales strategy.  Plaintiffs are informed and believe, and based thereon allege, that Defendants' Internet sales are or could be made on a nation-wide basis in interstate commerce, including in California.  As set forth above, Plaintiffs have numerous and expanding license deals whereby third parties are legally allowed to use Plaintiff Cheech's name in commerce and Plaintiffs' products are sold in a similar way to Defendants' products.

69.     Defendants adopted the name "Cheech's Own" in commerce in or about 2015, well after Plaintiffs' name was well-known and famous, and during which time Plaintiffs had already applied for, and later used, the Cheech trademark.

70.     Defendants have used Plaintiff Cheech's name in commerce for commercial purposes, without Plaintiffs' consent in connection with the "Cheech's Own" line of products and services and have, as a result, diluted Plaintiffs' existing trademark by blurring the distinctiveness of Plaintiffs' mark as well as the distinction between Plaintiffs and Defendants' products.  Such efforts by Defendants are made for the purpose of profiting from Plaintiff Cheech's name and fame and Koo Koo Banana, Inc.'s trademarks of Plaintiffs' Cheech's name.

71.     This blurring creates conditions that lessen the capacity of Plaintiffs' own marks to identify and distinguish goods and services owned or licensed by Plaintiff. Further, because there is no quality control over the mislabeled and misbranded marks used by Defendants, Defendants' marks also tarnish Plaintiffs' existing marks.

72.     As a result of Defendants' acts alleged herein, Plaintiffs have suffered, and will continue to suffer, damages in excess of the jurisdictional minimum of this Court in an amount to be proven at trial.

73.     Defendants' violations alleged herein are continuing and unless restrained and enjoined will cause irreparable injury to Plaintiffs' business and property for which Plaintiffs have no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF

### For Trademark Dilution Under the California Trademark Dilution Act– Cal. B&P Code §§ 14330-14335

### (Against all Defendants)

74.     Plaintiffs incorporate by reference the allegations of paragraphs 1

through 42 and 66 through 73, inclusive, of this Complaint as though fully set forth herein.

75.    Plaintiff Cheech is the owner of a famous trade name ("Cheech") valid at common law and Plaintiff Koo Koo Banana, Inc. is the owner of a federally registered mark of the same word under Title 15 of the United States Code.  Plaintiff Cheech has used his name in commerce for 50 years.  Plaintiff Cheech extensively and continuously advertises his name and mark throughout the country and the world via advertisements, social media, traditional media, personal appearances and live performances, among other avenues of exposure.  As a result of such efforts, Plaintiffs have obtained a high level of distinctiveness, public recognition and fame of Plaintiff Cheech and of his trade name and mark so that when people hear the word, "Cheech" they instantly think of Plaintiffs' name, identity, mark, likeness and/or persona.

76.    Plaintiffs sell products that use the Cheech name in commerce and that are distributed in many of the same channels that Defendants subsequently set-up to sell their own brand.  This includes resellers and physical stores as well as a coordinated Internet marketing sales strategy.  Plaintiffs are informed and believe, and based thereon allege, that such Internet sales are or could be made on a nation-wide basis in interstate commerce, including in California.  As set forth above, Plaintiffs have numerous and expanding license deals whereby third parties are legally allowed to use Plaintiff Cheech's name in commerce and Plaintiffs' products are sold in a similar way to Defendants'.

77.    Defendants adopted the name "Cheech's Own" in or about 2015, well after Plaintiffs' name was used in commerce and was well-known and famous, and also after Plaintiff Koo Koo Banana, Inc. applied for trademark registration.

78.    Defendants have used Plaintiffs' name and mark in commerce for commercial purposes, without Plaintiffs' consent in connection with the "Cheech's

weintraub tobin chediak coleman grodin
LAW CORPORATION

Own" line of products and services and have, as a result, diluted Plaintiffs' existing valid and well-known trade name and mark by blurring the distinction between Plaintiffs' and Defendants' products and attempting to profit thereby.  Such efforts by Defendants are made for the purpose of profiting from Plaintiff's name, fame and mark.

79.    This blurring creates conditions that lessen the capacity of Plaintiffs' own valid trade name and mark to identify and distinguish goods and services (including Cheech's personal appearance performance and concert services) owned by Plaintiffs.  Further, because there is no quality control over the mislabeled and misbranded marks used by Defendants, Defendants' marks also tarnish Plaintiffs' existing name and marks.

80.    As a result of Defendants' acts alleged herein, Plaintiffs have suffered, and will continue to suffer, damages in excess of the jurisdictional minimum of this Court in an amount to be proven at trial.

81.    Defendants' violations alleged herein are continuing and unless restrained and enjoined will cause irreparable injury to Plaintiffs' business and property for which Plaintiffs have no adequate remedy at law.

## SEVENTH CLAIM FOR RELIEF

### For Cyberpiracy – 15 U.S.C. § 1125(d)

### (Against all Defendants)

82.    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 42, inclusive, of this Complaint as though fully set forth herein.

83.    Plaintiff has knowingly and wrongfully registered, uses and traffics in the domain name "cheechsown.com" which incorporates Plaintiff Cheech's famous and personal name, which is already protected by trademark and by Plaintiff's fame in popular culture, which fame and distinction (including distinctiveness of the Cheech trademark) far predates Defendants' use or domain

name registration of the "cheechsown.com" domain name.

84.     The use of "cheechsown.com" is in knowing bad faith with a bad faith intent to profit from Plaintiff Cheech and his fame and Plaintiffs' distinctive mark. "Cheech's Own" or the derivative "cheechsown.com" website is confusingly similar to Plaintiffs' name and mark and also to Plaintiff Cheech's own website, "cheechmarin.com" and "cheechandchong.com."

85.     Plaintiffs have been damaged by Defendants' wrongful conduct in an amount to be determined by proof at trial, but which amount exceeds the jurisdictional minimum of this Court.

86.     In addition to any other damages to which Defendants may be subject, Plaintiffs are entitled under federal statute to the forfeiture or cancellation of Defendants' domain name.

**WHEREFORE**, Plaintiffs prays for judgment against Defendants, and each of them, as follows:

## AS TO THE FIRST CLAIM FOR RELIEF FOR VIOLATION OF THE CALIFORNIA COMMON LAW RIGHT OF PUBLICITY:

1.     For actual damages suffered by Plaintiffs in an amount to be proven at trial;

2.     For damage to Plaintiffs for injury to goodwill, professional standing, and future publicity value;

3.     For an Order requiring Defendants to account to and pay to Plaintiffs all gains, profits, benefits and advantages derived by Defendants from their use of Plaintiff Cheech's name in commerce;

4.     For temporary, preliminary and permanent injunctions enjoining Defendants from continuing to engage in the violations alleged, including but not limited to:

weintraub **tobin** chediak coleman grodin
LAW CORPORATION

a.  Selling, marketing or promoting any product containing Plaintiffs' famous trade name, "Cheech;"

b.  Using the website "Cheechsown.com" or any variant thereof;

c.  Using the corporate name, Cheech's Own, LLC;

d.  Using the "DBA" Cheech's Own Coffee Company;

e.  Infringing Plaintiffs' trade name in any manner and from continuing to use trade names which are confusingly similar to Plaintiffs' trade name in connection with any goods, services and/or shops and/or engaging in unfair competition;

f.  Engaging in any conduct which falsely tends to represent or is likely to confuse, mislead or deceive consumers and/or members of the public into thinking that Defendants are somehow affiliated with Plaintiffs or that Defendants' goods, services and/or shops are offered by Plaintiffs and/or that the Defendants' goods, services and/or shops have been sponsored, approved or licensed by Plaintiffs;

g.  Engaging in any conduct that tends to cause injury to Plaintiffs' business and/or reputation, unfairly competes with Plaintiffs and/or dilutes the distinctive quality of Plaintiffs' trade name or mark;

5.  For punitive and exemplary damages.

**AS TO THE SECOND CLAIM FOR RELIEF FOR VIOLATION OF THE CALIFORNIA STATUTORY RIGHT OF PUBLICITY:**

1.  For actual damages or statutory damages under Cal Civ. Code §3344, et seq. whichever is greater, for injury suffered by Plaintiffs in an amount to be proven at trial;

2.  For damage to Plaintiffs for injury to goodwill, professional standing, and future publicity value;

weintraub tobin chediak coleman grodin
LAW CORPORATION

3.      For an Order requiring Defendants to account to and pay to Plaintiffs all gains, profits, benefits and advantages derived by Defendants from their unauthorized use of Plaintiff Cheech's name in commerce;

4.      For temporary, preliminary and permanent injunctions enjoining Defendants from continuing to engage in the violations alleged, including but not limited to:

a.      Selling, marketing or promoting any product or service containing Plaintiffs' famous trade name, "Cheech;"

b.      Using the website "Cheechsown.com" or any variant thereof;

c.      Using the corporate name, Cheech's Own, LLC;

d.      Using the "DBA" Cheech's Own Coffee Company;

e.      Infringing Plaintiffs' trade name in any manner and from continuing to use trade names which are confusingly similar to Plaintiffs' trade name in connection with any goods, services and/or shops and/or engaging in unfair competition;

f.      Engaging in any conduct which falsely tends to represent or is likely to confuse, mislead or deceive consumers and/or members of the public into thinking that Defendants are somehow affiliated with Plaintiffs or that Defendants' goods, services and/or shops are offered by Plaintiffs and/or that the Defendants' goods, services and/or shops have been sponsored, approved or licensed by Plaintiffs;

g.      Engaging in any conduct that tends to cause injury to Plaintiffs' business and/or reputation, unfairly competes with Plaintiffs and/or dilutes the distinctive quality of Plaintiffs' trade name;

5.      For punitive and exemplary damages;

6.      For recovery of mandatory attorneys' fees and costs per statute.

{00189975.DOCX;}                                    23
                              **COMPLAINT**

**AS TO THE THIRD CLAIM FOR RELIEF FOR FEDERAL UNFAIR COMPETITION:**

1.      For the greater of actual damages suffered by Plaintiffs or statutory damages in the amount to be proven at trial;

2.      For temporary, preliminary and permanent injunctions enjoining Defendants and their officers, employees, directors, agents, servants, representatives, successors, assigns, and all persons, firms and corporations in active concert or participation with any of the aforementioned entities from directly or indirectly infringing Plaintiffs' trade name or otherwise engaging in false representation in any manner, including, but not limited to:

  a.      Selling, marketing or promoting any product or service containing Plaintiffs' famous trade name or mark, "Cheech;"

  b.      Using the website "Cheechsown.com" or any variant thereof;

  c.      Using the corporate name, Cheech's Own, LLC;

  d.      Using the "DBA" Cheech's Own Coffee Company;

  e.      Infringing Plaintiffs' trade name or mark in any manner and from continuing to use any trade name that includes the word "Cheech," which renders "Cheech's Own" confusingly similar to the trade names of Plaintiffs in connection with any goods, services and/or shops;

  f.      Engaging in any conduct which falsely tends to represent or is likely to confuse, mislead or deceive consumers and/or members of the public into thinking that Defendants are somehow affiliated with Plaintiffs or that Defendants' goods, services and/or shops are offered by Plaintiffs and/or that the Defendants' goods, services and/or shops have been sponsored, approved or licensed by Plaintiffs;

  g.      Engaging in any conduct tending to cause injury to Plaintiffs business and/or reputation and/or dilutes the distinctive

*weintraub tobin chediak coleman grodin*
LAW CORPORATION

1    quality of Plaintiffs' trade name; and

2          h.     Otherwise unfairly competing with Plaintiffs;

3     3.     For an Order requiring Defendants to deliver to Plaintiffs all

4    documents, goods and materials in their possession bearing any trade name and/or

5    design which is confusingly similar or substantially identical to Plaintiffs' trade

6    name or otherwise falsely designates and/or falsely represents the origin of

7    Defendants' goods, services and/or shops;

8     4.     For an Order requiring Defendants to account to and pay to Plaintiffs

9    all gains, profits, benefits and advantages derived from Defendants from their acts

10   of false designation of origin and false representation;

11    5.     For an Order requiring Defendants to pay all compensatory damages

12   suffered by Plaintiffs and/or damages sufficient to compensate for the injury

13   caused to Plaintiffs by Defendants' conduct;

14    6.     For punitive and exemplary damages.

15    **AS TO THE FOURTH CLAIM FOR RELIEF FOR UNFAIR**

16   **COMPETITION UNDER CALIFORNIA STATUTE AND COMMON**

17   **LAW:**

18    1.     For actual damages suffered by Plaintiffs in an amount to be proven at

19   trial;

20    2.     For temporary, preliminary and permanent injunctions under Cal. B&P

21   Code §17203, or as justice requires, enjoining Defendants from continuing to

22   engage in the violations alleged, including but not limited to:

23          a.     Selling, marketing or promoting any product or services

24          containing Plaintiffs' famous trade name or mark, "Cheech;"

25          b.     Using the website "Cheechsown.com" or any variant thereof;

26          c.     Using the corporate name, Cheech's Own, LLC;

27          d.     Using the "DBA" Cheech's Own Coffee Company;

28

weintraub tobin chediak coleman grodin
LAW CORPORATION

e.      Infringing Plaintiffs' trade name or mark in any manner and from continuing to use trade names which are confusingly similar to Plaintiffs' trade name or mark in connection with any goods, services and/or shops and/or engaging in unfair competition;

f.      Engaging in any conduct which falsely tends to represent or is likely to confuse, mislead or deceive consumers and/or members of the public into thinking that Defendants are somehow affiliated with Plaintiffs or that Defendants' goods, services and/or shops are offered by Plaintiffs and/or that the Defendants' goods, services and/or shops have been sponsored, approved or licensed by Plaintiffs;

g.      Engaging in any conduct that tends to cause injury to Plaintiffs' business and/or reputation, unfairly competes with Plaintiffs and/or dilutes the distinctive quality of Plaintiffs' trade name; and/or

h.      Otherwise unfairly competing with Plaintiff;

3.      For an Order requiring Defendants to deliver to Plaintiffs all documents, goods and materials in their possession bearing any trade name, and/or design which is confusingly similar or substantially identical to Plaintiffs' trade name;

4.      For an Order requiring Defendants to account to and pay to Plaintiffs all gains, profits, benefits and advantages derived by Defendants from their acts of false designation of origin and false representations;

5.      For an Order requiring Defendants to pay all compensatory damages suffered by Plaintiffs and/or damages sufficient to compensate for the injury caused to Plaintiffs by Defendants' conduct.

weintraub **tobin** chediak coleman grodin
LAW CORPORATION

**AS TO THE FIFTH CAUSE OF ACTION FOR VIOLATION OF THE FEDERAL TRADEMARK DILUTION ACT:**

1.      An award of damages from Defendants under 15 U.S.C. §1125(c)(2), trebled under 15 U.S.C. §1117(a);

2.      For temporary, preliminary and permanent injunctions enjoining Defendants from continuing to engage in the violations alleged, including but not limited to:

      a.      Selling, marketing or promoting any product or service that contains Plaintiffs' famous name or mark, "Cheech;"

      b.      Using the website "Cheechsown.com" or any variant thereof;

      c.      Using the corporate name, Cheech's Own, LLC;

      d.      Using the "DBA" Cheech's Own Coffee Company;

      e.      Diluting or infringing Plaintiffs' trade name and federally registered trademark in any manner and from continuing to use trade names which are confusingly similar to Plaintiffs' trade name and/or trademark in connection with any goods, services and/or shops;

      f.      Engaging in any conduct which falsely tends to represent or is likely to confuse, mislead or deceive consumers and/or members of the public into thinking that Defendants are somehow affiliated with Plaintiffs or that Defendants' goods, services and/or shops are offered by Plaintiffs and/or that the Defendants' goods, services and/or shops have been sponsored, approved or licensed by Plaintiffs;

      g.      Engaging in any conduct that tends to cause injury to Plaintiffs' business and/or reputation, unfairly competes with Plaintiffs and/or dilutes the distinctive quality of Plaintiffs' trade name;

3.      Because this is an exceptional case, Plaintiffs are entitled to recover their attorneys' fees along with the costs of this action under 15 U.S.C. §1117(a).

## AS TO THE SIXTH CAUSE OF ACTION FOR CALIFORNIA COMMON LAW DILUTION OF TRADE NAME:

1.     An award of damages from Defendants as allowed under common law;

2.     For temporary, preliminary and permanent injunctions enjoining Defendants from continuing to engage in the violations alleged, including but not limited to:

            a.     Selling, marketing or promoting any product or service that contains Plaintiff's famous name, "Cheech;"

            b.     Using the website "Cheechsown.com" or any variant thereof;

            c.     Using the corporate name, Cheech's Own, LLC;

            d.     Using the "DBA" Cheech's Own Coffee Company;

            e.     Diluting or infringing Plaintiffs' trade name and federally registered trademark in any manner and from continuing to use trade names which are confusingly similar to Plaintiffs' trade name and/or trademark  in connection with any goods, services and/or shops;

            f.     Engaging in any conduct which falsely tends to represent or is likely to confuse, mislead or deceive consumers and/or members of the public into thinking that Defendants are somehow affiliated with Plaintiffs or that Defendants' goods, services and/or shops are offered by Plaintiffs and/or that the Defendants' goods, services and/or shops have been sponsored, approved or licensed by Plaintiffs;

            g.     Engaging in any conduct that tends to cause injury to Plaintiffs' business and/or reputation, unfairly competes with Plaintiffs and/or dilutes the distinctive quality of Plaintiffs' trade name;

3.     For punitive and exemplary damages.

**weintraub tobin** chediak coleman grodin
LAW CORPORATION

**AS TO THE SEVENTH CAUSE OF ACTION FOR CYBERPIRACY:**

7.     For the greater of actual damages suffered by Plaintiffs or statutory damages in the amount to be proven at trial;

8.     For an order of forfeiture or cancellation of Defendants' website "cheechsown.com" or any variant thereof that uses Plaintiff's name or intellectual property;

9.     For temporary, preliminary and permanent injunctions enjoining Defendants and their officers, employees, directors, agents, servants, representatives, successors, assigns, and all persons, firms and corporations in active concert or participation with any of the aforementioned entities from directly or indirectly infringing Plaintiffs' trade name or otherwise engaging in false representation in any manner, including, but not limited to:

a.     Selling, marketing or promoting any product or service containing Plaintiffs' famous trade name, "Cheech;"

b.     Using the website "Cheechsown.com" or any variant thereof;

c.     Using the corporate name, Cheech's Own, LLC;

d.     Using the "DBA" Cheech's Own Coffee Company;

e.     Infringing Plaintiffs' trade name or mark in any manner and from continuing to use any trade name or mark that includes the word "Cheech," which renders "Cheech's Own" confusingly similar to the trade names or mark of Plaintiffs in connection with any goods, services and/or shops;

f.     Engaging in any conduct which falsely tends to represent or is likely to confuse, mislead or deceive consumers and/or members of the public into thinking that Defendants are somehow affiliated with Plaintiffs or that Defendants' goods, services and/or shops are offered by Plaintiffs and/or that the Defendants' goods, services

**weintraub tobin** chediak coleman grodin
LAW CORPORATION

and/or shops have been sponsored, approved or licensed by Plaintiffs;

g.      Engaging in any conduct tending to cause injury to Plaintiffs business and/or reputation and/or dilutes the distinctive quality of Plaintiffs' trade name; and

h.      Otherwise unfairly competing with Plaintiffs;

10.     For an Order requiring Defendants to deliver to Plaintiffs all documents, goods and materials in their possession bearing any trade name and/or design which is confusingly similar or substantially identical to Plaintiffs' trade name or otherwise falsely designates and/or falsely represents the origin of Defendants' goods, services and/or shops;

11.     For an Order requiring Defendants to account to and pay to Plaintiffs all gains, profits, benefits and advantages derived from Defendants from their acts of false designation of origin and false representation;

12.     For punitive and exemplary damages.

## AS TO ALL CAUSES OF ACTION:

1.     For reasonable attorneys' fees;

2.     For costs of suit; and

3.     For such other and further relief as the Court deems just and proper.

Dated:  September 18, 2019     Respectfully Submitted,

**WEINTRAUB TOBIN LAW CORPORATION**
DAVID R. GABOR

_____/ S /   *David R. Gabor*

David R. Gabor
Attorney for Plaintiffs
Richard Cheech Marin and
Koo Koo Banana, Inc.

1

## **DEMAND FOR JURY TRIAL**

2

3
     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs
hereby demands trial by jury on all issues triable by jury.

4

5
Dated:  September 18, 2019          Respectfully Submitted,

6

7
                          **WEINTRAUB TOBIN LAW CORPORATION**
                          DAVID R. GABOR

8

9
                               _/ S /    David R. Gabor_
                          David R. Gabor

10
                          Attorney for Plaintiffs

11
                          Richard Cheech Marin and
                          Koo Koo Banana, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

weintraub **tobin** chediak coleman grodin
LAW CORPORATION

# EXHIBIT A

| To: | Cheech's Own LLC (jennifer@cheechsown.com) |
|---|---|
| Subject: | U.S. TRADEMARK APPLICATION NO. 87799675 - CHEECH'S OWN - N/A |
| Sent: | 6/5/2018 5:05:44 PM |
| Sent As: | ECOM123@USPTO.GOV |
| Attachments: | Attachment - 1 |
|  | Attachment - 2 |
|  | Attachment - 3 |
|  | Attachment - 4 |
|  | Attachment - 5 |
|  | Attachment - 6 |
|  | Attachment - 7 |
|  | Attachment - 8 |
|  | Attachment - 9 |
|  | Attachment - 10 |
|  | Attachment - 11 |
|  | Attachment - 12 |
|  | Attachment - 13 |
|  | Attachment - 14 |

**UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)**
**OFFICE ACTION (OFFICIAL LETTER) ABOUT APPLICANT'S TRADEMARK APPLICATION**

**U.S. APPLICATION SERIAL NO.** 87799675

**MARK:** CHEECH'S OWN

**\*87799675\***

**CORRESPONDENT ADDRESS:**
JENNIFER L FLEISCHER
LAW OFFICES OF FLEISCHER & FLEISCHER
25 NORTH BRIDGE STREET
SOMERVILLE, NJ 08876-1454

**CLICK HERE TO RESPOND TO THIS LETTER:**
http://www.uspto.gov/trademarks/teas/response_forms.jsp

VIEW YOUR APPLICATION FILE

**APPLICANT:** Cheech's Own LLC

**CORRESPONDENT'S REFERENCE/DOCKET NO:**
N/A
**CORRESPONDENT E-MAIL ADDRESS:**
jennifer@cheechsown.com

**OFFICE ACTION**

**STRICT DEADLINE TO RESPOND TO THIS LETTER**

TO AVOID ABANDONMENT OF APPLICANT'S TRADEMARK APPLICATION, THE USPTO MUST RECEIVE APPLICANT'S COMPLETE RESPONSE TO THIS LETTER **WITHIN 6 MONTHS** OF THE ISSUE/MAILING DATE BELOW. A RESPONSE TRANSMITTED THROUGH THE TRADEMARK ELECTRONIC APPLICATION SYSTEM (TEAS) MUST BE RECEIVED BEFORE MIDNIGHT **EASTERN TIME** OF THE LAST DAY OF THE RESPONSE PERIOD.

**ISSUE/MAILING DATE: 6/5/2018**

The referenced application has been reviewed by the assigned trademark examining attorney. Applicant must respond timely and completely to the issues below. 15 U.S.C. §1062(b); 37 C.F.R. §§2.62(a), 2.65(a); TMEP §§711, 718.03.

**SEARCH OF OFFICE'S DATABASE OF MARKS**

The trademark examining attorney has searched the Office's database of registered and pending marks and has found no conflicting marks that would bar registration under Trademark Act Section 2(d). TMEP §704.02; *see* 15 U.S.C. §1052(d).

**SUMMARY OF ISSUES**:
- TRADEMARK ACT SECTION 2(a) REFUSAL – FALSE ASSOCIATION BETWEEN APPLIED-FOR MARK AND NAME OF FAMOUS LIVING INDIVIDUAL
- TRADEMARK ACT SECTION 2(c) REFUSAL – APPLIED-FOR MARK IS A NAME IDENTIFYING A PARTICULAR LIVING INDIVIDUAL
- §2.61(b) REQUEST – INQUIRY ABOUT RELATIONSHIP BETWEEN APPLICATION AND PERSON NAMED IN MARK

**TRADEMARK ACT SECTION 2(a) REFUSAL – FALSE ASSOCIATION BETWEEN APPLIED-FOR MARK AND NAME OF FAMOUS LIVING INDIVIDUAL**

Registration is refused because the applied-for mark consists of or includes matter which may falsely suggest a connection with Cheech Marin. Trademark Act Section 2(a), 15 U.S.C. §1052(a). Although Cheech Marin is not connected with the goods provided by applicant under the applied-for mark, Cheech Marin is so well-known that consumers would presume a connection. *See id.*

Under Trademark Act Section 2(a), the registration of a mark that "consists of or comprises matter that may falsely suggest a connection with persons, institutions, beliefs, or national symbols" is prohibited. *In re Pedersen*, 109 USPQ2d 1185, 1188 (TTAB 2013). To establish that an applied-for mark falsely suggests a connection with a person or an institution, the following is required:

    (1)    The mark sought to be registered is the same as, or a close approximation of, the name or identity previously used by another person or institution.

    (2)    The mark would be recognized as such, in that it points uniquely and unmistakably to that person or institution.

    (3)    The person or institution identified in the mark is not connected with the goods sold or services performed by applicant under the mark.

    (4)    The fame or reputation of the named person or institution is of such a nature that a connection with such person or institution would be presumed when applicant's mark is used on its goods.

*In re Pedersen*, 109 USPQ2d at 1188-89; *In re Jackson Int'l Trading Co.* , 103 USPQ2d 1417, 1419 (TTAB 2012); TMEP §1203.03(c)(i); *see also Univ. of Notre Dame du Lac v. J.C. Gourmet Food Imps. Co.*, 703 F.2d 1372, 1375-77, 217 USPQ 505, 508-10 (Fed. Cir. 1983) (providing foundational principles for the current four-part test used to determine the existence of a false connection).

The term at issue need not be the actual, legal name of the party falsely associated with applicant's mark to be unregistrable under Section 2(a). TMEP §1203.03; *see, e.g.*, *Hornby v. TJX Cos.*, 87 USPQ2d 1411, 1417, 1424 (TTAB 2008) (finding TWIGGY to be the nickname of professional model Lesley Hornby); *Buffett v. Chi-Chi's, Inc.* 226 USPQ 428, 429-30 (TTAB 1985) (finding MARGARITAVILLE to be the persona of singer Jimmy Buffett). The term must, however, be so uniquely and unmistakably associated with the named party as to constitute

that party's name or identity.   TMEP §1203.03; *see, e.g.*, *In re Cotter & Co.*, 228 USPQ 202, 204-05 (TTAB 1985); *Buffett v. Chi&€'Chi's, Inc.* 226 USPQ at 429.

In this case, the applied for mark **CHEECH'S OWN**, uses the name **CHEECH** which is the shortened name used by the famous comedian, actor, narrator, and writer, Cheech Marin. See attached evidence from http://cheechmarin.com/, http://cheechmarin.com/memoir/, and https://twitter.com/cheechmarin?lang=en.

Applicant has applied for "Coffee; Coffee and coffee substitutes; Coffee and tea; Coffee based beverages; Coffee beans; Coffee beverages with milk; Coffee-based beverages; Coffee-based iced beverages; Prepared coffee and coffee-based beverages; Roasted coffee beans" in International Class 30. Cheech Marin is a brand ambassador for PAPALOTE MEZCAL. See attached evidence from http://papalotemezcal.com/our-brand-ambasador/. Therefore, his name is already connected to a beverage. Moreover, consumers are familiar with celebrities creating coffee lines, e.g., Rob Zombie (https://mysmartcup.com/hellbilly-brew-available-from-rob-zombie/), Martha Stewart (http://marthastewartcafeshop.com/marthas-blend-whole-bean/), and Hugh Jackman (https://www.laughingmanfoundation.org/#our-origin). Furthermore, celebrities are also known for creating other food products. See attached evidence. For example, Oprah (http://www.othatsgood.com/products), Paul Newman (https://newmansown.com/faqs/?type=general-newmans-own; https://www.newmansown.com/beverages/), and Dwight Yoakam (http://www.bakersfieldbiscuits.com/history.html) all have food lines. As a result, consumers would reasonably believe Cheech Marin is connected to the applicant's mark.

Thus, registration is refused because the applied-for mark consists of or includes matter which may falsely suggest a connection with famous comedian, actor, narrator, and writer Cheech Marin. Trademark Act Section 2(a), 15 U.S.C. §1052(a).

Applicant should note the following additional ground for refusal.

## TRADEMARK ACT SECTION 2(c) REFUSAL – APPLIED-FOR MARK IS A NAME IDENTIFYING A PARTICULAR LIVING INDIVIDUAL

Registration is refused because the applied-for mark consists of or comprises a name, portrait, or signature identifying a particular living individual whose written consent to register the mark is not of record. Trademark Act Section 2(c), 15 U.S.C. §1052(c); TMEP §1206; *see In re Nieves & Nieves LLC*, 113 USPQ2d 1639, 1649-50 (TTAB 2015); *In re Hoefflin*, 97 USPQ2d 1174, 1175-76 (TTAB 2010).

For purposes of Section 2(c), a name in a mark identifies a particular living individual if the person bearing the name will be associated with the mark as used on the goods or services because: "(1) the person is so well known that the public would reasonably assume a connection between the person and the goods or services; or (2) the individual is publicly connected with the business in which the mark is used." *In re Nieves & Nieves LLC*, 113 USPQ2d 1639, 1650 (TTAB 2015); *see In re Hoefflin*, 97 USPQ2d 1174, 1175-76 (TTAB 2010); *Krause v. Krause Publ'ns, Inc.*, 76 USPQ2d 1904, 1909-10 (TTAB 2005).

Section 2(c) applies not only to the full name of an individual, but also to any first name, surname, shortened name, pseudonym, stage name, title, or nickname that identifies a particular living individual. *In re Nieves & Nieves LLC*, 113 USPQ2d 1629, 1639 (TTAB 2015) (holding registration of the mark PRINCESS KATE barred under Section 2(c) in the absence of consent to register, because the mark "points uniquely and unmistakably to Kate Middleton," the Duchess of Cambridge, whose identity is renowned); *In re Hoefflin*, 97 USPQ2d 1174, 1177-78 (TTAB 2010) (holding registration of the marks OBAMA PAJAMA, OBAMA BAHAMA PAJAMAS, and BARACK'S JOCKS DRESS TO THE LEFT barred under Section 2(c) in the absence of consent to register, because the marks create a direct association with President Barack Obama); *In re Sauer,* 27 USPQ2d 1073, 1074-75 (TTAB 1993) (holding registration of a mark containing BO, used in connection with a sports ball, barred under Section 2(c) in the absence of consent to register, because BO is the nickname of the well-known athlete BO JACKSON and thus use of the mark would lead to the assumption that he was associated with the goods), *aff'd per curiam* , 26 F.3d 140 (Fed. Cir. 1994).

As stated above, **CHEECH** is the shortened name of Cheech Marin, a famous comedian, actor, narrator and writer. Since celebrities are commonly associated with food product lines and Cheech Marin already endorses a beverage, the public would reasonably assume a connection between him and food products, such as coffee, coffee-based beverages, and coffee beans.

The refusal under Section 2(c) will be withdrawn if applicant provides both of the following:

(1)   A statement that the name shown in the mark identifies **Cheech Marin**, a living individual whose consent is of record.  If the name represents that of a pseudonym, stage name, title and name combination, or nickname, applicant must include a statement that CHEECH identifies the stage name or nickname of Richard Marin, a living individual whose consent is of record.

(2)   A written consent, personally signed by the individual whose name, signature, or portrait appears in the mark, authorizing applicant to register the identifying matter as a trademark and/or service mark with the USPTO; for example, an applicant may use, if applicable, the following: "I, **Cheech Marin**, consent to the use and registration of my name as a trademark and/or service

mark with the USPTO."

*See* TMEP §§813, 813.01(a), 1206.04(a).

Applicant is advised that the written consent must include a statement of the party's consent to applicant's *registration*, and not just the *use*, of the identifying matter as a trademark. *See Krause v. Krause Publ'ns, Inc.*, 76 USPQ2d 1904, 1912-13 (TTAB 2005); *In re New John Nissen Mannequins*, 227 USPQ 569, 571 (TTAB 1985); TMEP §1206.04(a).

Although applicant's mark has been refused registration, applicant may respond to the refusal by submitting evidence and arguments in support of registration. However, if applicant responds to the refusals, applicant must also respond to the requirement set forth below.

## §2.61(b) REQUEST – INQUIRY ABOUT RELATIONSHIP BETWEEN APPLICATION AND PERSON NAMED IN MARK

Due to the renown of the institution or person named in the mark, and the fact that there is no information in the application record regarding a connection with applicant, applicant must specify whether the person or institution named in the mark has any connection with applicant's goods, and if so, must describe the nature and extent of that connection. *See* 37 C.F.R. §2.61(b); TMEP §1203.03(c)(i).

## RESPONSE GUIDELINES

**TEAS PLUS OR TEAS REDUCED FEE (TEAS RF) APPLICANTS – TO MAINTAIN LOWER FEE, ADDITIONAL REQUIREMENTS MUST BE MET, INCLUDING SUBMITTING DOCUMENTS ONLINE:** Applicants who filed their application online using the lower-fee TEAS Plus or TEAS RF application form must (1) file certain documents online using TEAS, including responses to Office actions (see TMEP §§819.02(b), 820.02(b) for a complete list of these documents); (2) maintain a valid e-mail correspondence address; and (3) agree to receive correspondence from the USPTO by e-mail throughout the prosecution of the application. *See* 37 C.F.R. §§2.22(b), 2.23(b); TMEP §§819, 820. TEAS Plus or TEAS RF applicants who do not meet these requirements must submit an additional processing fee of $125 per class of goods. 37 C.F.R. §§2.6(a)(1)(v), 2.22(c), 2.23(c); TMEP §§819.04, 820.04. However, in certain situations, TEAS Plus or TEAS RF applicants may respond to an Office action by authorizing an examiner's amendment by telephone or e-mail without incurring this additional fee.

## ASSISTANCE

If applicant has questions regarding this Office action, please telephone or e-mail the assigned trademark examining attorney. All relevant e-mail communications will be placed in the official application record; however, an e-mail communication will not be accepted as a response to this Office action and will not extend the deadline for filing a proper response. *See* 37 C.F.R. §2.62(c), 2.191; TMEP §§304.01-.02, 709.04-.05. Further, although the trademark examining attorney may provide additional explanation pertaining to the refusals and requirements in this Office action, the trademark examining attorney may not provide legal advice or statements about applicant's rights. *See* TMEP §§705.02, 709.06.

/Aubrey Biache/
Examining Attorney
Trademark Law Office 123
(571) 270-0120
aubrey.biache@uspto.gov

**TO RESPOND TO THIS LETTER:** Go to http://www.uspto.gov/trademarks/teas/response_forms.jsp. Please wait 48-72 hours from the issue/mailing date before using the Trademark Electronic Application System (TEAS), to allow for necessary system updates of the application. For *technical* assistance with online forms, e-mail TEAS@uspto.gov. For questions about the Office action itself, please contact the assigned trademark examining attorney. **E-mail communications will not be accepted as responses to Office actions; therefore, do not respond to this Office action by e-mail.**

**All informal e-mail communications relevant to this application will be placed in the official application record.**

**WHO MUST SIGN THE RESPONSE:** It must be personally signed by an individual applicant or someone with legal authority to bind an applicant (i.e., a corporate officer, a general partner, all joint applicants). If an applicant is represented by an attorney, the attorney must sign the response.

**PERIODICALLY CHECK THE STATUS OF THE APPLICATION:** To ensure that applicant does not miss crucial deadlines or official notices, check the status of the application every three to four months using the Trademark Status and Document Retrieval (TSDR) system at http://tsdr.uspto.gov/. Please keep a copy of the TSDR status screen. If the status shows no change for more than six months, contact the Trademark Assistance Center by e-mail at TrademarkAssistanceCenter@uspto.gov or call 1-800-786-9199. For more information on checking status, see http://www.uspto.gov/trademarks/process/status/.

**TO UPDATE CORRESPONDENCE/E-MAIL ADDRESS:** Use the TEAS form at http://www.uspto.gov/trademarks/teas/correspondence.jsp.

4:43 PM 6/5/2018

http://cheechmarin.com/



HOME   PRESS   NEWS   CHICANO ART   BOOKS   FILM   CONTACT   CHEECH & CHONG

**Cheech Marin** is an actor, director, comedian, author, and Chicano art collector. He's also half of a comedy duo called Cheech and Chong, man.



## News and Events

January 8th, 2018 - No Comments

*NEW! "Los Tejanos: Chicano Art from the Cheech Marin Collection" Book + Exhibit*



Los Tejanos: Chicano Art from the Cheech Marin Collection presents 38 artworks by 14 artists born and/or based in Texas who are currently represented in

*February 14th, 2017*

*Long-Awaited Memoir Now on Sale!*



Counterculture legend Cheech Marin came of age at an interesting time in America and became a self-made counterculture legend with his other half, Tommy ...

*October 19th, 2016*

*"Papel Chicano Dos: Works on Paper" Book + Exhibit*



Papel Chicano Dos: Works on Paper from the Collection of Cheech Marin presents 65 artworks by 24 established and emerging artists. Their work demonstrates ...

Copyright © 2017 Cheech Marin. All rights reserved. Website by *Fraslir Oberlander*

4:43 PM 6/5/2018

http://cheechmarin.com/memoir/





**HOME     PRESS     NEWS     CHICANO ART     BOOKS     FILM     CONTACT     CHEECH & CHONG**

## *Long-Awaited Memoir Now on Sale!*

*by MeRichBan on Feb 14, 2017*



Counterculture legend Cheech Marin came of age at an interesting time in America and became a self-made counterculture legend with his other half, Tommy Chong.

*Cheech Is Not My Real Name: ...But Don't Call Me Chong* is an insightful memoir that delves into how Cheech dodged the draft, formed one of the most successful comedy duos of all time, became the face of the recreational drug movement with the film *Up in Smoke*, forged a successful solo career with roles in *The Lion King* and, more recently, *Jane the Virgin*, and became the owner of the most renowned collection of Chicano art in the world.

Written in Cheech's uniquely hilarious voice, his memoir will take you to new highs.

**DOWNLOAD PRESS RELEASE HERE**

Order *Cheech Is Not My Real Name: ...But Don't Call Me Chong* NOW online at your favorite bookstore or through these booksellers:

Amazon
Barnes & Noble
iTunes
Indiebound

Google Play
Kobo

Sign up for News from Cheech!

email address

Subscribe



Cheech Marin ✔
2.8M likes

Like Page

Be the first of your friends to like this

### MEET CHEECH ON TOUR!

Cheech will be signing his memoir *Cheech Is Not My Real Name: ...But Don't Call Me Chong* and in many cases, also presenting a talk at the following locations:

---

**WED 3/15/17 @ 7:00 PM**
**Barnes & Noble Union Square**
**33 E. 17th St., New York, NY 10003**
**(212) 253-0810**

*Free author talk with introduction by Emmy and Peabody Award-winning journalist Geraldo Rivera and moderated by comedian Jeffrey Gurian followed by book signing. Personalizations and line photo opportunities acceptable, time permitting. No memorabilia signed.*

**BUY YOUR BOOK NOW• RSVP on Facebook**

---

**THU 3/16/17 @ 7:30 PM**
**Free Library of Philadelphia co-presented by Joseph Fox Bookshop at Parkway Central Library**
**1901 Vine St., Philadelphia, PA 18103**
**(215) 567-4341**

*Ticketed author talk moderated by Andy Kahan, Ruth and A Morris Williams Director of Author Events, followed by book signing. Tickets are $15 general admission and $7 students. Signed books will be sold on site by Joseph Fox Bookshop separately. Personalizations and line photo opportunities acceptable, time permitting. No memorabilia signed.*

**BUY TICKETS HERE• RSVP on Facebook**

---

**THU 3/23/17 @ 7:00 PM**
**Mesa Arts Center co-presented by Changing Hands Bookstore**
**1 E. Main St., Mesa, AZ 85201**
**(480) 644-6500**

*Ticketed author talk moderated by Robert C. Booker, Executive Director, Arizona Commission on the Arts followed by book signing. Personalizations and line photo opportunities acceptable, time permitting. No memorabilia signed. Seating is general admission and opens at 6:00 PM... TICKETS → Package 1 ($34): One (1) signed hardcover copy of Cheech is Not My Real Name and admission for one (1) person — Package 2 ($35): One (1) signed hardcover copy of Cheech is Not My Real Name and admission for two (2) people*

**BUY TICKETS HERE• RSVP on Facebook**

---

**TUE 3/28/17 @ 7:30 PM**
**Aratani Theatre presented by the Library Foundation of Los Angeles ALOUD Series**
**244 S. San Pedro St., Los Angeles, CA 90012**
**(213) 680-3700**

*Ticketed author talk moderated by Marisol "La Marisoul" Hernandez of GRAMMY Award-winning La Santa Cecilia followed by a musical performance by Cheech with La Santa Cecilia and a book signing. Tickets do not include book purchase and are $45 Premiere ($42 Library Foundation Members) and $25 General ($22 Library Foundation Members). Service and handling fees applicable. All sales are final. No refunds or exchanges. Book purchases are separate and require proof of purchase that evening for signing. Personalizations and line photo opportunities acceptable, time permitting. No memorabilia signed.*

**BUY TICKETS HERE• RSVP on Facebook**

---

**WED 3/29/17 @ 6:30 PM**
**"Look Who's Talking" Lecture Series at Riverside Art Museum**
**3425 Mission Inn Ave., Riverside, CA 92501**

## Recent Comments

The Rich Visions of Harsch LA Artist Carlos Almaraz | The California Report | KQED News on Chicano Art

Jody Quintana on *Between Worlds: The Moth in Mesa*

Charlotte Navas (@Charlotte_y_que - RAR) on *What is a Chicano?*

Long-Awaited Memoir Coming! Pre-Order Today! – Cheech Marin on Chicano Art

San Mateo Performing Arts Center presented by Kepler's Books and Magazines
600 N. Delaware St., San Mateo, CA 94401
(650) 762-0258

*Ticketed author talk moderated by American political satirist Will Durst followed by book signing. Tickets are $45 (which includes a book and a place in signing line) and $20 general admission (which does not include a book). Books can also be purchased separately that evening. Personalizations and line photo opportunities acceptable, time permitting. No memorabilia signed.*

**BUY TICKETS HERE • RSVP on Facebook**

**SAT 4/1/17 @ 5:00 PM**
Tertulia Coffee and Sanchez Contemporary
1951 Telegraph Ave., Oakland, CA 94612
(510) 350-7871

**DETAILS on Facebook**

*Ticketed author talk moderated by Tim Sanchez followed by book signing. Personalizations and line photo opportunities acceptable, time permitting. No memorabilia signed. UPDATE: This event is SOLD OUT, but visit Facebook link above to learn how you can buy and pick up your signed book at Tertulia Coffee or Sanchez Contemporary!*

**THU 4/6/17 @ 7:00 PM**
Landmark River Oaks Theatre presented by Brazos Bookstore
2009 W. Gray St., Houston, TX 77019
(713) 523-0701 • www.brazosbookstore.com

*Ticketed author talk moderated by Ernie Manouse, host of Houston Public Media's InnerVIEWS, followed by book signing. Tickets are only $27, which includes general admission seating and a signed book. Additional books must be purchased online at least 24 hours in advance or by calling (713) 523-0701 to reserve your copy for purchase on site. No books or merchandise purchased elsewhere will be signed. Arrive early because parking is limited. There is abundant street parking nearby. Pay in advance to guarantee seating and signed books. Personalizations and line photo opportunities acceptable, time permitting.*

**BUY TICKETS HERE**

**THU 4/20 @ 6:00 PM – THE ROSE THEATRE**
300 E. Green St. #101, Pasadena, CA 91101
(888) 645-5006 • www.roseconcerts.com
Buy Tickets

**SUN 4/23 @ 2:30 PM – LA TIMES FESTIVAL OF BOOKS**
USC Campus, Los Angeles, CA 90089
www.latimes.com/festivalofbooks

**REVIEWS & PRAISE**



*"I still can't believe I lost Celebrity Jeopardy to Cheech Marin! Had I read this book first, I would have known that besides being funny, he is smart, thoughtful and wicked fast on the buzzer." ~ Anderson Cooper*

*"I remember listening to Cheech and Chong's Christmas skit when I was a kid. Cheech was always a trailblazer. He's incredibly intelligent and endlessly creative. I cast him in so many of my movies because of his magic, his heart, and his spirit. This book finally shows the side of Cheech that I've known and cherished for 25 years." ~ Robert Rodriguez, filmmaker and founder of the El Rey Network*

*"'Cheech Is Not My Real Name . . . But Don't Call Me Chong' is a brilliant recollection of a career that spans decades, in explicit detail and precise recall, as a fan and a friend, I felt like I was finding a new piece of an incredible puzzle on every page. This book is a testament to tacitly dispel any talk about marijuana having negative effects. Cheech, thanks for sharing your amazing life with us!" ~ George Lopez, comedian and actor*

*"Not only is Cheech Marin an innovative comedian and actor, he is a great student of life and a generous champion of other artists. The story of his life is as interesting as the characters he creates." ~ John Lasseter, Chief Creative Officer, Pixar & Walt Disney Animation Studios*

*"Cheech Marin...a man I've known for over three decades...is one of the funniest, most profound, artistic and creative human beings on the planet. There is so much more to this man than has been presented to the public through just Cheech & Chong. His memoir is fascinating and will no doubt hold your interest...and I'm proud to call him my friend." ~ John Paul DeJoria, Founder & Chairman of Patron, Spirits and Paul Mitchell Haircare and Philanthropist*

*"Cheech Marin is one of the biggest influences on my comedy and my marijuana advocacy. Along with Snoop Dogg, Willie Nelson and Tommy Chong, he is one of the faces I'd put on my Mt. Kushmore. Whatever you do, do not smoke this book, read it!" ~ Doug Benson, comedian*

*"As a teenager, Cheech was my hero. His generously anarchic spirit made complete sense to me. Plus he made my parents really mad. Now I am my parents age, and he seems more heroic than ever. I just finished reading CHEECH in one unable-to-put-down-the-book-adrenaline-rush. This should be required reading for anyone who has a sense of rumor or a song or a clue." ~ Christopher Ashley, Artistic Director of The La Jolla Playhouse and Director of the Tony Award-winning MEMPHIS*

*"[This memoir is a] rollicking, plot-rich personal inquiry, in which Marin attempts to answer the question he has heard like a refrain over the nearly 70 years he's been alive, 'What the hell are you?' A fascinating self-portrait and social and artistic history." ~ Booklist*

*"Bookended by looks at his youth growing up poor in South Central Los Angeles and his development as a now well-known collector of Chicano art, this memoir is fun, wacky look inside Marin's imagination." ~ Publishers Weekly*

*"A mildly diverting, modestly charming memoir from a surprisingly multifaceted showbiz survivor." ~ Kirkus*

« Previous article                                                                                          Next article »

Copyright © 2017 Cheech Marin. All rights reserved. Website by Travis Oberlander



4 45 PM 6/5/2018
http://papalotemezcal.com/our-brand-ambasador/

 


OUR BRAND AMBASADOR
# Cheech Marin ←



Cheech Marin is known as an American comedian, actor, narrator and writer who gained recognition during the 1970s and 1980s. Cheech is also admired as the owner of the most extensive Chicano art collection in the world. Cheech feels that it is important to "use his celebrity status to call attention" to what he sees as an under-appreciated and under-represented style of art. Cheech proudly travels the world exhibiting his art collection as an avid supporter of the Chicano art form.

Cheech Marin has long been heralded as one of America's favorite comedians and has gained a reputation as a "feel good, enjoy life, have fun" persona. Cheech brings to the Tres Papalote® collaboration his passion for living one's best life ever, with an invitation to consumers to step up to the elegance of the Tres Papalote® experience.

Accompanying his experience as a respected businessman and art collector, Cheech has developed the taste level of a sophisticated gentleman. As brand ambassador, his message to the public is: "Now it's your turn—discover the spirit of a new era and experience the magic of Tres Papalote® Mezcal—my Mezcal!

JOIN US ON  

WE ENCOURAGE OUR CUSTOMERS TO ALWAYS DRINK RESPONSIBLY.

OUR STORY      OUR RECIPES      ASK OUR MIXOLOGIST      WHERE TO BUY      DISTRIBUTOR PORTAL      CONTACT US



Imported by Riviera Imports, Manhasset NY  |  © 2018 Riviera Imports  |  Terms & Conditions

Website by 9 digital

4:45 PM 6/5/2018

https://mysmartcup.com/hellbilly-brew-available-from-rob-zombie/



| Home | Cafe ⌄ | Roasters ⌄ | Support | News | SmartCup Mobile | Contact Us |

## Hellbilly Brew Available from Rob Zombie

October 31, 2017 by smartcup · Leave a Comment



The illustrious man of horror — both in film and rock — is known for many things, but now Rob Zombie wants to add coffee to his repertoire. As such, he's selling his own Hellbilly line of beans.

"What can I say? I f—ing love coffee," Zombie told Noisecreep. "I started drinking this magic drink when I was a little kid and never stopped. So that's the reason I now have my own Hellbilly brew; 24/7, cranked on black gold! Hell yeah, let's go!" With green coffee beans now at a value higher than ever before, we can all call our morning cups liquid gold.

Right now, Hellbilly's whole roasted beans can be ordered through Zombie's website with two different styles available: a French blend and a Peruvian. Both are certified 100 percent organic.

The French roast promises on first sip to have a "surprising characteristic that you'll notice when you purchase whole beans — a hint of speckle." Blended from various roasts, the Hellbilly French Roast goes for a more complex taste than just hitting the second temperature crack that makes French roasts the darkest of coffees to begin your day with.

The Peruvian beans hold to the medium-bodied style and fruit finish that are synonymous with the coffee cultivated in the areas reaching from the tips of the Andes to the moist and breezy forests of the Amazon Basin.

Scheduled to be shipping now, Hellbilly coffee would make a great belated holiday gift for your closest coffee fiend.

Download Rob Zombie Songs | Buy Rob Zombie Albums

Filed Under: SmartCup News

## Speak Your Mind

Name *

Email *

Website

POST COMMENT

### FEATURED VIDEO



XPress Lid - Wet Opera...

XPress Makes a Perfect Cup of Coffee

Search this website ...    SEARCH

### NEWS FROM XPRESS LID BY SMARTCUP

- Bob Koffee Interview (11)
- Communities (5)
- EVENT PODCAST (4)
- EVENT VIDEO (31)
- Features (4)
- Industry News (93)
- Innovations (7)
- SmartCup News (109)
- Updates (4)
- XFress Success (5)

### ENEWS AND UPDATES

Sign up to receive breaking news!

your email address    GO

### RSS UPDATES

RSS - Posts

### LATEST NEWS

- Yelp Review For Coffeefest
- Chris Pirillo of Lockergnome
- PODCAST #1  Steve Friley @ Roasters Guild Retreat
- Gloria Jean's Coffees
- XFress Lid Goes Large: Now Available for 20oz Cups

4:46 PM 6/5/2018

http://marthastewartcafeshop.com/marthas-blend-whole-bean/



## Martha's Blend - Whole Bean

### $13.50

★ ★ ★ ★ ★  8 product reviews

**Quantity:**

1

ADD TO CART

G+  f  ⊠  @  ⍩

### Product Description

For Martha, the very best coffees should be complex in flavor and never bitter or burnt. Her signature blend combines medium-roast beans from Ethiopia, Kenya, and Guatemala with a darker Indonesian roast. It's bold yet nuanced, with a full body and deep, rich finish.

This package holds 12 ounces of Martha's Blend whole coffee beans, yielding 31 8-ounce cups.

### Product Reviews

© 2018 MARTHA STEWART LIVING OMNIMEDIA, INC. ALL RIGHTS RESERVED

Terms of Sale | Terms of Use | Privacy Policy | FAQ

4:46 PM 6/5/2018

https://www.laughingmanfoundation.org/#our-origin

# OUR ORIGIN



LAUGHING MAN COFFEE STARTED WITH A PROMISE HUGH JACKMAN MADE TO OUR GOOD FRIEND AND ETHIOPIAN COFFEE FARMER DUKALE AND HIS FAMILY.

The Laughing Man Foundation supports coffee farming communities by investing in programs that clear the way to health, growth, and success for coffee farmers and their families. It started with a promise Hugh Jackman made to our good friend and Ethiopian Coffee farmer Dukale and his family. Since meeting Dukale, Hugh was inspired to start Laughing Man Coffee and the Laughing Man Foundation to support Dukale and similar farmers around the coffee growing world. What we learned from Dukale was first, that amazing coffees are being grown by small farmers like Dukale and they needed to be shared. Second, coffee farming is a family affair. Everyone is part of the process and family is not just those in your home but the community around you that helps and benefits from your success. This appreciation for community and family is very much a part of how we operate our cafes and we wanted the foundation to be an extension of that. So we look to programs that are not so much about making more sustainable coffee,



# Current Project



4:47 PM 6/5/2018

http://www.othatsgood.com/products



OUR PRODUCTS ▾      OUR MISSION      WHERE TO BUY      SHARE

## CHEESY PIZZAS

O. That's Good! Pizzas are made using real ingredients like meats and cheeses, but with the added goodness of cauliflower baked right into the crust. Enjoy the cheesy pizza you have always loved in a whole new way.






**SUPREME PIZZA**
with a TWIST of
cauliflower

**FIVE CHEESE PIZZA**
with a TWIST of
cauliflower

**FIRE ROASTED
VEGGIE PIZZA**
with a TWIST of
cauliflower

**UNCURED
PEPPERONI PIZZA**
with a TWIST of
cauliflower

*Less than ½ cup vegetables per serving

## FLAVORFUL SOUPS

O. That's Good! soups are made using real ingredients like broccoli and potatoes, but with the added goodness of hearty vegetables like butternut squash and cauliflower. Rediscover your favorite recipes thanks to a whole new, nutritious TWIST.






**BAKED POTATO
SOUP**

**CREAMY
BUTTERNUT**

**BROCCOLI CHEDDAR
SOUP**

**CREAMY TOMATO
BASIL SOUP**

4:47 PM 6/5/2018

http://www.othatsgood.com/products

# FLAVORFUL SOUPS

O. That's Good! soups are made using real ingredients like broccoli and potatoes, but with the added goodness of hearty vegetables like butternut squash and cauliflower. Rediscover your favorite recipes thanks to a whole new, nutritious TWIST.

   

| BAKED POTATO SOUP | CREAMY BUTTERNUT SQUASH SOUP | BROCCOLI CHEDDAR SOUP | CREAMY TOMATO BASIL SOUP |
| --- | --- | --- | --- |
| with a TWIST of cauliflower | with a TWIST of sweet potatoes & carrots | with a TWIST of butternut squash | with a TWIST of celery & carrots |

# SAVORY SIDES

Made to please everyone at your table. O. That's Good! sides pack flavorful ingredients alongside the nutritious deliciousness of cauliflower and beans. Enjoy the classic comforts you love in a whole new way.

   

| ORIGINAL MASHED POTATOES | GARLIC MASHED POTATOES | THREE CHEESE PASTA | CREAMY PARMESAN PASTA |
| --- | --- | --- | --- |
| with a TWIST of cauliflower | with a TWIST of cauliflower | with a TWIST of butternut squash | with a TWIST of white beans |



OUR PRODUCTS

MISSION

WHERE TO BUY

"Everything's better when you share it."
- Oprah

 

© 2017 Harpo Studios, LLC All rights reserved.   Privacy Policy   Terms of Use

http://www.othatsgood.com/products/Garlic-Mashed-Potatoes

4:48 PM 6/5/2018

https://newmansown.com/faqs/?type=general-newmans-own







## HISTORY

Since our founding just before the turn of the century, the Dwight Yoakam's Bakersfield Biscuit brand has been synonymous with quality, comfort, taste and style. Over the span of our history, Dwight Yoakam's Bakersfield Biscuit Brand will use only the finest ingredients and employ only the best craftsmen available to bring you the best food product.

Our Humble Beginning
Dwight Yoakam's Bakersfield Biscuit Brand was founded by legendary entertainer Dwight Yoakam and Biscuit Boy. BOY was born in Oklahoma in 1952, just outside of the Seneca-Cayuga Indian Reservation.

BOY was the second of four kids born into Carmel Carl and Charlene's family of traveling carnies who worked the midways, carnivals and fairs throughout the Midwest and south with their concession business selling caramel apples, cotton candy, funnel cakes, and roasted ears of corn on the cob (when in season). When the family business grew to include Charlene's Chicken and Biscuits, BOY learned at his momma's knee her time-tested recipe for buttermilk biscuits and showed such a knack for making them that he came to be known as Biscuit BOY.

When Biscuit Boy was about 16, he fell in love with Dori Rae Rattliffe who was out canvassing for the evangelical crusade of Reverend Ernest Fellows and his Traveling Flock of the Sacred Wounded (The Reverend anointed her the "Flower Child" who would pass out the token Roses of Sharon to the newly-saved converts who came forward during each service.) Boy followed his lovesick heart, leaving Carmel Carl and Charlene to join Fellows' Flock, taking his momma's biscuit recipe with him. For fifteen years Biscuit BOY stayed with the flock as an assistant shepherd, serving up his biscuits at tent meetings, until, at one fateful revival in Bakersfield, CA, the Reverend's oldest boy from a previous marriage spilled a story about his father's current double-marriage and shady history of handling donations, the news of which soon found Rev. Fellows serving a chunk of time for Income Tax Fraud.

Biscuit Boy, finding himself on his own in Bakersfield, was looking for work at a music store (since he used to tune guitars for his uncle's band that played the carnivals) when he happened to meet up with Dwight Yoakam who was buying some strings and a guitar strap. Dwight was in town for the Grand opening of Buck Owens' Crystal Palace nightclub and restaurant and, after learning of Boy's inherited talent for food, got him hired on as a cook at the Crystal Palace. Dwight asked Biscuit Boy if he couldn't whip up a little something special for Buck to celebrate the Grand Opening, so the two of them took Biscuit Boy's special recipe, incorporated a few of Dwight's own ideas, and prepared a batch of buttermilk biscuits. The folks liked 'em so much, they just had to keep making 'em.

Our Amazing Success
Since then, the incredible team of Biscuit Boy, Dwight Yoakam and their distributor Modern Foods, have introduced dozens of new food items into the marketplace, including Bean Dips, Mini Cheeseburgers, Chicken Sandwiches, Ribs and - of course - biscuits.

And that's how Dwight Yoakam's Bakersfield Biscuits came to be served at Buck Owen's Crystal Palace, and how they're now available at your local store. Just heat'em and eat'em.

| To: | Cheech's Own LLC (jennifer@cheechsown.com) |
|---|---|
| **Subject:** | U.S. TRADEMARK APPLICATION NO. 87799675 - CHEECH'S OWN - N/A |
| **Sent:** | 6/5/2018 5:05:46 PM |
| **Sent As:** | ECOM123@USPTO.GOV |
| **Attachments:** | |

### UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)

## IMPORTANT NOTICE REGARDING YOUR
## U.S. TRADEMARK APPLICATION

USPTO OFFICE ACTION (OFFICIAL LETTER) HAS ISSUED
ON 6/5/2018 FOR U.S. APPLICATION SERIAL NO. 87799675

Please follow the instructions below:

**(1) TO READ THE LETTER:** Click on this link or go to http://tsdr.uspto.gov, enter the U.S. application serial number, and click on "Documents."

The Office action may not be immediately viewable, to allow for necessary system updates of the application, but will be available within 24 hours of this e-mail notification.

**(2) TIMELY RESPONSE IS REQUIRED:** Please carefully review the Office action to determine (1) how to respond, and (2) the applicable response time period. Your response deadline will be calculated from 6/5/2018 (or sooner if specified in the Office action). A response transmitted through the Trademark Electronic Application System (TEAS) must be received before midnight **Eastern Time** of the last day of the response period. For information regarding response time periods, see http://www.uspto.gov/trademarks/process/status/responsetime.jsp.

**Do NOT hit "Reply" to this e-mail notification, or otherwise e-mail your response** because the USPTO does NOT accept e-mails as responses to Office actions. Instead, the USPTO recommends that you respond online using the TEAS response form located at http://www.uspto.gov/trademarks/teas/response_forms.jsp.

**(3) QUESTIONS:** For questions about the contents of the Office action itself, please contact the assigned trademark examining attorney. For *technical* assistance in accessing or viewing the Office action in the Trademark Status and Document Retrieval (TSDR) system, please e-mail TSDR@uspto.gov.

## WARNING

**Failure to file the required response by the applicable response deadline will result in the ABANDONMENT of your application.** For more information regarding abandonment, see http://www.uspto.gov/trademarks/basics/abandon.jsp.

**PRIVATE COMPANY SOLICITATIONS REGARDING YOUR APPLICATION:** Private companies **not** associated with the USPTO are using information provided in trademark applications to mail or e-mail trademark-related solicitations. These companies often use names that closely resemble the USPTO and their solicitations may look like an official government document. Many solicitations require that you pay "fees."

Please carefully review all correspondence you receive regarding this application to make sure that you are responding to an official document from the USPTO rather than a private company solicitation. All official USPTO correspondence will be mailed only from the "United States Patent and Trademark Office" in Alexandria, VA; or sent by e-mail from the domain "@uspto.gov." For more information on how to handle private company solicitations, see http://www.uspto.gov/trademarks/solicitation_warnings.jsp.